UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KYMBERLEY COLE ROSENCRANS,    :
                               :CIVIL ACTION NO. 3:17-CV-55
            Plaintiff,      :
                               :(JUDGE CONABOY)
            v.              :
                               :
QUIXOTE ENTERPRISES INC.      :
(D/B/A "Adult World")        :
and                             :
CHARLES ERIC MORROW,         :
                               :
            Defendants.     :
                               :

_____

## MEMORANDUM

Defendant'S Motion to Dismiss Plaintiff's Complaint (Doc. 8) is pending before the Court.  Defendant requests that the Court dismiss Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 9 at 2.)  For the reasons discussed below, the Court concludes Defendant's motion is properly granted in part and denied in part.

## I. Background

Plaintiff states in her Complaint that Defendant Quixote Enterprises Inc., ("Adult World") is in the adult entertainment business with approximately eighteen retail establishments in Pennsylvania, New York, and New Jersey.  (Doc. 1 ¶ 10.)  Defendant Morrow is the principal officer in charge of Adult World.  (*Id.* ¶ 11.)

Plaintiff had known Defendant Morrow since approximately 2009, and had provided cleaning services to him.  (*Id.* ¶ 19.)  She

alleges that she and Defendant Morrow became close friends and had a sexual relationship "earlier in 2015," i.e., sometime before October 2015. (*Id.* ¶¶ 12, 19.)

In October 2015, Defendant Morrow offered Plaintiff a position managing six stores at a salary of $35,000, with fringe benefits including a vehicle, gas card, 401K plan and health insurance. (*Id.* ¶ 12.)  Plaintiff accepted the job offer and began working for Adult World on or about November 9, 2015. (*Id.* ¶¶ 13, 15.)

Plaintiff got married on Sunday, November 15, 2015. (*Id.* ¶ 15.)  The following week she worked Tuesday through Friday as scheduled. (*Id.*)

On Friday, November 20, 2015, another manager told Plaintiff "that she wasn't working out and that they decided to give another chance to the other girl Plaintiff was supposed to be replacing." (*Id.* ¶ 17.)  The manager was allegedly acting on instruction from Defendant Morrow who told Plaintiff the same thing via text, adding "you have a new husband."  (*Id.* ¶¶ 17-18.)  Plaintiff adds that male employees who got married were not fired and Defendant "contrived specific reasons for firing Plaintiff" in response to the EEOC charge. (*Id.* ¶¶ 21, 22.)

Plaintiff filed her Complaint in this Court on January 9, 2017. (Doc. 1.)  The Complaint contains two counts: Count One for Sex Discrimination in violation of Title VII and the PHRA against Defendant Adult World; and Count Two for Aiding and Abetting Sex

Discrimination in violation of the PHRA against Defendant Morrow. (Doc. 1 at 5-6.)

Defendants filed the instant motion on February 14, 2017, accompanied by a supporting brief.  (Docs. 8, 9.)  On February 21, 2017, Plaintiff filed an opposing brief.  (Doc. 10.)  With the filing of Defendants' reply brief (Doc. 11) on February 26, 2017, this matter was fully briefed and became ripe for disposition.

## II. Discussion

### A. Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the reviewing court may dismiss a complaint for "failure to state a claim upon which relief may be granted."  Detailed pleading is not required--"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give fair notice of what the . . . claim is and the grounds upon which it rests,' *Conley v. Gibson*, 355 U.S. 41, 47 . . . (1957)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Court noted that, although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly*, 550 U.S. at 555).  *Iqbal* also reiterated the *Twombly* guidance that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.' 550 U.S. at 555 . . .  Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual

enhancement.' *Id.* at 557."  556 U.S. at 678.

> To survive a motion to dismiss, a
> complaint must contain sufficient factual
> matter, accepted as true, to state a claim to
> relief that is plausible on its face."
> [*Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955.
> A claim has facial plausibility when the
> plaintiff pleads factual content that allows
> the Court to draw the reasonable inference
> that the defendant is liable for the
> misconduct alleged.  *Id.*, at 556, 127 S.Ct.
> 1955.  The plausibility standard is not akin
> to a "probability requirement," but it asks
> for more than a sheer possibility that a
> defendant has acted unlawfully.  *Ibid.*  Where
> a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it
> "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"
> *Id.*, at 557, 127 S. Ct. 1955 (brackets
> omitted).

556 U.S. at 678.

   Pursuant to *Twombly* and *Iqbal*, the Court of Appeals for the

Third Circuit set out three steps required of a court reviewing the

sufficiency of a claim in *Connelly v. Lane Constr. Corp.*, 809 F.3d

780, 787 (3d Cir. 2016).

> First, it must "tak[e] note of the elements
> [the] plaintiff must plead to state a claim."
> *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937.
> Second, it should identify allegations that,
> "because they are no more than conclusions,
> are not entitled to the assumptions of
> truth."  *Id.* at 679, 129 S.Ct. 1937.  *See
> also Burch v. Milberg Factors, Inc.*, 662
> F.3d 212, 224 (3d Cir. 2011) ("Mere
> restatements of the elements of a claim are
> not entitled to the assumption of truth."

4

> (citation and editorial remarks omitted)).
> Finally, "[w]hen there are well-pleaded
> factual allegations, [the] court should
> assume their veracity and then determine
> whether they plausibly give rise to an
> entitlement to relief." *Iqbal*, 556 U.S. at
> 679, 129 S.Ct. 1937.

809 F.3d at 787. Importantly, a Plaintiff is not required to establish the elements of a *prima facie* case--"the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Connelly*, 809 F.3d at 789 (quoting *Twombly*, 550 U.S. at 556); *see also Phillips v. City of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**B.   *Defendant's Motion***

Defendants maintain that Plaintiff's claims for quid pro quo sexual harassment and disparate treatment in Count One must be dismissed because the claims are supported only by unsubstantiated allegations and are unsupported by proof or additional substance. (Doc. 9 at 3-4.) Defendants similarly contend that Count Two against Defendant Morrow must be dismissed because Plaintiff's Complaint does not state that Defendant Morrow had anything to do with her termination or provide sufficient facts to state a cause

of action.   (Doc. 9 at 4.)

**1.   Corporate Defendant Claims**

In Count One, Plaintiff claims Defendant Adult World violated Title VII and the Pennsylvania Human Relations Act ("PHRA").  As noted above, Defendants maintain Count One must be dismissed because Plaintiff has not pled facts which show she is entitled to relief on the bases alleged.  (Doc. 9 at 2-4.)  The Court concludes Defendants have not met their burden of showing that Plaitniff's disparate treatment claim must be dismissed.

The provisions of the PHRA are generally construed as coextensive with their federal counterparts, in this instance with the federal anti-discrimination statutes, unless a difference in the applicable statutory language indicates a different result is warranted.  *Fogleman v. Mercy Hospital*, 283 F.3d 561, 567 (3d Cir. 2002); *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996); *Toth v. California University of Pennsylvania*, 844 F. Supp. 2d 611, 626 (W.D. Pa. 2012).  For the purposes of the review of Count One, the Court refers only to federal law as no distinction between Title VII and the PHRA is warranted regarding the claims alleged therein.

Title VII's anti-discrimination provision is codified at 42 U.S.C. § 2000e-2(a) which explains that it is

> an unlawful employment practice for an
> employer--
>
>> (1) to fail or refuse to hire or to

6

> discharge any individual, or otherwise to
> discriminate against any individual with
> respect to his compensation, terms,
> conditions, or privileges of employment,
> because of such individual's race, color,
> religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his
> employees or applicants for employment in any
> way which would deprive or tend to deprive
> any individual of employment opportunities or
> otherwise adversely affect his status as an
> employee, because of such individual's race,
> color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

The elements necessary to prove a discrimination claim vary depending on the type of discrimination alleged and the theory upon which a plaintiff proceeds. "A Title VII plaintiff can make out a claim for discrimination 'under either the pretext theory set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973), or the mixed-motive theory set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 . . . (1989), under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons.'" *Connelly*, 809 F.3d at 787 (quoting *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008)).

> Under either theory, the plaintiff must
> show that her protected status was a factor
> in the employer's challenged action. The
> difference is in the degree of causation that
> must be shown: in a "mixed-motive" case, the
> plaintiff must ultimately prove that her
> protected status was a "motivating" factor,
> whereas in a non mixed-motive or "pretext"
> case, the plaintiff must ultimately prove
> that her status was a "determinative" factor.

7

*Connelly*, 809 F.3d at 788 (quoting *Makky*, 541 F.3d at 214-20). A complaint need not specify which theory a plaintiff plans to proceed under as the distinction between the types of cases "lies in the kind of proof the employee produces on the issue of bias." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir. 1995). Thus, when considering a motion to dismiss, the reviewing court assumes that the plaintiff may proceed under either theory for purposes of noting the elements of a discrimination claim. *Connelly*, 809 F.3d at 788. For example in a disparate treatment claim, a plaintiff could ultimately prevail by proving that protected status was either a "motivating" or "determinative" fact in the employer's adverse employment action. *Id.* at 789.

When considering the elements necessary to defeat a motion to dismiss, The Third Circuit Court of Appeals "has repeatedly emphasized that the requirements of the prima facie case are flexible." *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 357 (3d Cir. 1999). "[T]he elements of a prima facie case depend on the facts of the particular case." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411 (3d Cir. 1999).

a.   *Quid Pro Quo Sexual Harassment*

In Plaintiff's Complaint, Count One alleges violations of Title VII and the PHRA by Defendant Adult World and includes the assertion that "Defendant fired Plaintiff after she married because Morrow wanted her to be available for a sexual relationship during

the course of her employment.  That's implicit quid pro quo sex discrimination."  (Doc. 1 ¶ 24.)  The Court concludes Plaintiff has not properly pled this claim.

Title VII's protections against gender-based discrimination include "the prohibition on an employer's carrying out threats in retaliation for an employee's responses to the employer's sexual harassment."  *Kress v. Birchwood Landscaping*, No. 3:05-CV-566, 2007 WL 800996, at *16 (M.D. Pa. Mar. 14, 2007) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998)).  In this vein, a plaintiff can make out a claim for *quid pro quo* sexual harassment by showing that a tangible employment action resulted from an employee's response to unwelcome advances of a sexual nature. *Ellerth*, 524 U.S. at 753-54; *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281-82 (3d Cir. 2000).

In determining whether Plaintiff has sufficiently pled a claim for quid pro quo sexual harassment, pursuant to *Connelly*, the Court first looks to the elements of this claim.  To make out a claim for *quid pro quo* sexual harassment a plaintiff must show 1) unwelcome advances of a sexual nature; and 2) that "her response to these advances was subsequently used as a basis for a decision about compensation, [terms, conditions, or privileges of employment]." *Farrell*, 206 F.3d at 281-82; *see also Kress v. Birchwood Landscaping*, No. 3:05-CV-566, 2007 WL 800996, at *16 (M.D. Pa. Mar. 14, 2007); *Pergine v. Penmark Management Co.*, 314 F. Supp. 2d 485,

490-91 (E.D. Pa. 2004).  "In other words, Plaintiff must show that 'a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands.'"  *Wilson v. Checker Drive-In Restaurants, Inc.*, Civ. A. No. 12-5365, 2013 WL 2256133, at *4 (E.D. Pa. May 23, 2013) (quoting *Ellerth*, 524 U.S. at 753).

As argued by Defendants, Plaintiff "has not discussed any incident or pled any facts that show Defendant Morrow requested sexual favors during her employment or that Defendant Morrow made either explicit or implicit sexual suggestions as a term or condition of Plaintiff's employment."  (Doc. 9 at 3.)  Plaintiff presents a conclusory narrative in support of plausibility, but she does not cite a single incident of an unwelcome advance made by Defendant Morrow.[1]  (Doc. 10 at 4.)  Plaintiff stated in her Complaint that "Morrow believed that by hiring Plaintiff, he was also entitled to resume a sexual relationship with Plaintiff when he wanted it.  Plaintiff's marriage thwarted his plan, and so she was cast aside."  (Doc. 1 ¶ 20.)  As presented, this is a conclusory statement not entitled to the assumption of truth

---

[1] A relationship that is consensual at its inception does not necessarily preclude a quid pro quo claim by an employee, if the employee later attempts to break off the relationship and suffers an adverse employment action as a result.  *See Hartman v. Sterling, Inc.*, No. 01-2630, 2003 WL 22358548, at *7 (E.D. Pa. 2003). Although Plaintiff alleges that she and Defendant Morrow had a consensual sexual relationship at some time in 2015 prior to her employment and marriage (Doc. 1 ¶ 19), Plaintiff has not pled facts which show the legal relevance of that relationship to the claims asserted.

pursuant to *Iqbal*, 556 U.S. at 679--the statement gives no rise to an indication that Defendant Morrow made unwelcome advances of a sexual nature to which Plaintiff negatively responded. *Farrell*, 206 F.3d at 281-82. Thus, the Court gets to the final stage of the required analysis with no well-pleaded factual allegations to support Plaintiff's entitlement to relief on this claim. Because Plaintiff has pled no facts supporting essential elements of a quid pro quo sexual harassment claim and because Plaintiff would have knowledge of such facts, Plaintiff has not "raised a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Connelly*, 809 F.3d at 789. Therefore, Plaintiff's quid pro quo sexual harassment claim is properly dismissed.

*b.   Disparate Treatment*

Plaintiff also alleges in Count One that "[m]en who married were not promptly fired just because they got married. Only Plaintiff was. That's disparate treatment sex discrimination." (Doc. 1 ¶ 25.) The Court concludes Plaintiff has satisfied the pleading standards for this claim.

As noted above, a plaintiff could ultimately prevail on a disparate treatment claim by proving that protected status was either a "motivating" or "determinative" fact in the employer's adverse employment action. *Connelly*, 809 F.3d at 789. Thus, at the motion to dismiss stage she would have to plead facts sufficient to give rise to the reasonable expectation that she

11

could make such a showing.  *Id.*  Similarly, a prima facie case for disparate treatment requires a plaintiff to show she (1) was a member of a protected class, (2) was qualified for the position, and (3) another, not in the protected class was treated more favorably.  *Foxworth v. Pennsylvania State Police*, 228 F. App'x 151, 157 (3d Cir. 2007) (not precedential) (citing *McDonnell Douglas*, 411 U.S. at 802-03).

Here Plaintiff's claim that she was promptly fired when she got married and men were not (Doc. 1 ¶ 25) is a claim that she was treated less favorably than men because of her status as a woman. Plaintiff argues that if she "proves she was fired for getting married, and that men who got married were not, this would implicate 42 U.S.C. § 2000e-2(a)(1) for sex discrimination.  This is plausible at this stage, given Morrow's reference to Plaintiff's 'new husband.'" (Doc. 10 at 4 (citing Doc. 1 ¶ 18).)  Unlike the quid pro quo claim where no mention was made in the Complaint of a necessary element of the claim, here Plaintiff's complaint avers that she was fired five days after she was married, that the fact of her marriage was mentioned in a text from Defendant Morrow regarding her termination, and that men who got married were not fired.  (Doc. 1 ¶¶ 16-18, 21.)  These are factual allegations and the Court is to assume their veracity at this stage of the proceedings.  *Iqbal*, 556 U.S. at 679.  Thus, the Court must determine whether they plausibly give rise to an entitlement to

relief.  *Id.*  Here Plaintiff has satisfied the plausibility standard with the averments set out above because, if proven true, she would be in a position to show that her status as a woman was a "motivating" or "determinative" fact in the decision to terminate her employment.  *See Connelly*, 809 F.3d at 789.

Defendants' arguments to the contrary are not persuasive for several reasons.  First, Defendants misconstrue Plaintiff's claim, characterizing it as a claim that she was subject to disparate treatment because "no other male married employees were terminated."  (Doc. 9 at 4.)  Clearly, Plaintiff's claim has to do with a change in marital status.  (Doc. 1 ¶¶ 16-18, 21.) Second, Defendants' statement that "Quixote has terminated other married employees during the course of its business, both male and female" (Doc. 9 at 4), suffers from a similar characterization problem--the fact that both married men and married women had been terminated in the course of their employment with Defendant Quixote does not refute the assertion that a woman who was unmarried at the time she was hired and was fired shortly after she was married was treated differently than men who were unmarried when they were hired and subsequently were married and not promptly terminated.  Moreover, conflicting factual assertions are not properly the subject of a motion to dismiss.  Third, Defendant incorrectly states that "[p]lausible is not enough to establish a prima facie case to support an action for sex discrimination."  (Doc. 11 at 2.)  This

13

unsupported assertion is clearly in conflict with the standards governing a motion to dismiss set out above.  Finally, Defendants' assertion that Plaintiff "has failed to prove that she was qualified for the position but otherwise fired" (Doc. 11 at 3), is confusing a prima face case evidentiary standard with a pleading requirement.  *See Connelly*, 809 F.3d at 789.  Plaintiff's factual allegations, including that she was hired by Defendant Morrow for the managerial position after having known him for over five years (Doc. 1 ¶¶ 12, 19) is enough to raise a reasonable expectation that discovery will reveal evidence that Plaintiff was at some point deemed qualified for the position.  *See Twombly*, 550 U.S. at 556.

Because Defendants have not shown that Plaintiff failed to state a claim for disparate treatment discrimination, this claim properly goes forward.

2.   **PHRA Claims**

With Count Two Plaintiff claims Defendant Morrow violated the PHRA because "he acted in concert with Defendant Adult World, aided Defendant Adult World and abetted Defendant Adult World in discriminating against Plaintiff on account of her gender" as set out previously in the Complaint.  (Doc. 1 ¶ 31.)  While Defendants' arguments in support of dismissal of Count One were spare at best, the Court concludes Defendants' one-paragraph substantive argument in support of dismissal of Count Two (Doc. 9 at 4) is inadequate to carry the burden of showing that dismissal of Count Two in its

14

entirety on substantive grounds is proper.  However, consistency and clarity require a brief discussion of Defendant Morrow's liability on the bases asserted.

The PHRA makes it unlawful "[f]or any person, employer, employment agency, labor organization or employe [sic], to aid, abet, incite, compel or coerce the doing of any act declared . . . to be an unlawful discriminatory practice . . . or to attempt, directly or indirectly, to commit any act declared . . . to be an unlawful discriminatory practice."  42 Pa. Stat. § 955(e).  Thus, under the PHRA there are circumstances where an individual may be held liable under the PHRA where he or she may not be held liable under Title VII.  *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996).

Because Count Two relies on the same facts and allegations as Count One (Doc. 1 ¶ 31), and because Plaintiff alleges that Morrow was involved in the decision to terminate her and communicated about the termination via text message (Doc. 1 ¶¶ 17, 18), Plaintiff has pled Defendant Morrow's involvement in the adverse employment action.  For the reasons the Court determined that Plaintiff's disparate treatment claim against Defendant Quixote goes forward, this claim properly goes forward against Defendant Morrow.  However, the determination that Plaintiff pled no facts to support her quid pro quo sexual harassment claim, applies to Defendant Morrow as well.  Therefore, Count Two goes forward only

15

as to Plaintiff's disparate treatment claim.

To the extent Defendants may be attempting to present a procedural basis to dismiss Count Two (Doc. 9 at 4-5), any such argument is not sufficiently presented to allow analysis.

## 3. <u>Punitive Damages</u>

Defendants assert that Plaintiff demands punitive damages which are not available under the PHRA. (Doc. 9 at 5.) Plaintiff responds that she does not seek punitive damages under the PHRA. (Doc. 10 at 5.) Because Plaintiff's Complaint shows that she seeks punitive damages "as permitted by Title VII," Defndants' request regarding punitive damages is deemed moot.

## III. Conclusion

For the reasons discussed above, Defendant'S Motion to Dismiss Plaintiff's Complaint (Doc. 8) is granted in part and denied in part. The motion is granted insofar as the quid pro quo sexual harassment claim is dismissed from Count One and Count Two. The motion is denied insofar as Plaintiff's disparate treatment claims against Defendant Quixote and Defendant Morrow go forward.

Because the Court cannot conclude that allowing Plaintiff an opportunity to amend her complaint regarding her quid pro quo sexual harassment claim would be futile, *Grayson*, 293 F.3d at 108, Plaintiff will be granted the opportunity to file an amended complaint within fourteen (14) days of the date of this Order.

16

An appropriate Order is filed simultaneously with this Memorandum.

                                    S/Richard P. Conaboy
                                    RICHARD P. CONABOY
                                    United States District Court

DATED: March 27, 2017